612 A.2d 426

COMMONWEALTH of Pennsylvania, Appellant,

v.

Guy H. DAVIS, Appellee.

Supreme Court of Pennsylvania.

Argued March 12, 1992.

Decided June 17, 1992.

David J. Flower, Dist. Atty., Somerset, for appellant.

Julianne Keri, Somerset, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

OPINION ANNOUNCING THE JUDGMENT
OF THE COURT

PAPADAKOS, Justice.

In 1983 and 1984, Appellee, Guy H. Davis, the Sheriff of Somerset County and Warden of the Somerset County Jail,

engaged in numerous incidents of homosexual conduct with various inmates at the Somerset County Jail, who were cajoled into these liaisons by threats, or promises of favorable treatment from Davis in his official capacity as supervisor of the local penal system. As a result of these acts, Davis was charged by the Attorney General's Office with one count of involuntary deviate sexual intercourse (18 Pa.C.S. § 3128); six counts of indecent assault (18 Pa.C.S. § 3126); six counts of indecent exposure (18 Pa.C.S. § 3127); and six counts of official oppression (18 Pa.C.S. § 5301).

In a plea bargain arrangement, Appellee pled guilty but mentally ill to the six counts of official oppression before the Honorable Daniel J. Ackerman who was specially appointed to preside over the case. The remaining charges were "nolle prossed," that is, not further prosecuted.

On October 24, 1985, Davis was sentenced by Judge Ackerman to a lenient ten (10) year probationary sentence. As a condition of his probation, he was also required to: 1) immediately resign the position of Sheriff and Warden at Somerset County; 2) hold no position for compensation or otherwise in law enforcement or any other position that would place him in custody or control of prisoners, children or incompetent adults; and 3) undergo and continue appropriate psychiatric and mental health evaluation and treatment as necessary.

Appellee violated this probation on September 28 and September 30, 1988, when he transported a 13–year–old male to the State of Ohio for the purpose of engaging in homosexual relations. For this crime, Appellee was prosecuted under the Mann Act, 18 U.S.C. §§ 2421 and 2423, in the United States District Court for the Western District of Pennsylvania. He pled guilty to these federal charges.

The Appellee's state probation was revoked by the Honorable Eugene E. Fike, II, of the Somerset County Court of Common Pleas on January 9, 1989, based on the federal charges and the admitted illicit conduct of the Appellee.

Judge Fike re-sentenced Appellee on July 21, 1989, to a sentence of fifty (50) months to one hundred twenty (120)

months to run consecutively to any federal sentence. In this re-sentencing proceeding, as in the original sentencing proceeding, no hearing was held as is mandated by 42 Pa.C.S. § 9727 to determine if Appellee was in need of treatment pursuant to the Mental Health Procedures Act, 50 P.S. § 7101, et seq.

Appellee then filed a Motion for Modification which was heard on August 18, 1989. In the hearing on the motion, Judge Fike stated that he was incorporating into the resentencing proceeding the record of the original sentencing proceeding and made specific reference to the mental health evaluation done on the Appellee while he was in federal custody. Judge Fike also noted that the Appellee had no additional evidence to present concerning his mental status. Judge Fike made a specific finding that the court could not find that the defendant was severely mentally disabled under the Mental Health Procedures Act. The Motion for Modification was denied and the sentence was unchanged. Appellee appealed to the Superior Court.

The Superior Court, in a 2–1 memorandum decision (with Judge Ford–Elliott dissenting), held that the sentencing court had violated the clear mandate of 42 Pa.C.S. § 9727(a), by neglecting to take testimony and make a finding on the issue of whether Appellee, *at the time of re-sentencing,* was severely mentally disabled and in need of treatment. The Superior Court ordered the judgment of sentence vacated and remanded the case for further proceedings. 402 Pa.Super. 653, 578 A.2d 36.

Section 9727(a) of the Sentencing Code provides, in pertinent part, as follows:

A defendant found guilty but mentally ill or whose plea of guilty but mentally ill is accepted under the provisions of 18 Pa.C.S. Section 314 (relating to guilty but mentally ill) may have any sentence imposed on him which may lawfully be imposed on any defendant convicted of the same offense. *Before imposing sentence,* the court *shall* hear testimony and make a finding on the issue of whether the defendant at the time of sentencing is severely mentally disabled and in

need of treatment pursuant to the provisions of the act of July 9, 1976 (P.L. 817, No. 143) known as the "Mental Health Procedures Act." (Emphasis added).

The Superior Court panel held that the language of § 9727(a)—"the court shall hear testimony and make a finding on the issue of whether the defendant at the time of sentencing is severely mentally disabled . . ."—is mandatory. That court thus concluded that: "The sentencing court, in neglecting to take testimony and make a finding 'on the issue of whether the defendant at the time of sentencing [was] severely mentally disabled and in need of treatment pursuant to the provisions of the [Mental Health Procedures Act]' . . ., violated the clear mandate of the statute." The Superior Court majority, acknowledging that § 9727(a), by its terms, applies to the sentencing of a defendant who is found guilty but mentally ill or whose plea of guilty but mentally ill is accepted, held that the requirement to take testimony and make a finding on the issue of mental disability at the time of sentencing was applicable to the re-sentencing of Appellee. We find this necessarily so, especially when no such hearing was held during the initial sentencing. The Superior Court reached this conclusion even though that portion of the statute (§ 9727(f)) dealing with probation and the revocation of probation does not specifically require such a hearing on re-sentencing, and even though Appellee waived his right to a pre-sentence investigation at the time of his original sentence.

The Commonwealth contends that such an interpretation ignores the clear language of the statute which relates to sentencing and not re-sentencing. This argument is unpersuasive. The Superior Court majority properly relied upon *Commonwealth v. Pierce,* 497 Pa. 437, 441 A.2d 1218 (1982), which governs this case, and where we held, in an opinion by Mr. Justice Larsen, that under 18 P.S. § 1371(b), "upon revocation of probation, the court possesses the same sentencing alternatives that it had at the time of the initial sentencing." 497 Pa. at 440, 441 A.2d 1218. The same rights or powers give rise to the same duties! We think that under the mandatory language of § 9727(a), as well as our own case law,

the mental health hearing described in the statute was obligatory upon revocation of probation and re-sentencing where no such hearing was held at sentencing itself.

▆ Also, the Commonwealth argues that, assuming that the Superior Court is correct that 42 Pa.C.S. § 9727(a) applies to re-sentencing proceedings, the Superior Court erred insofar as it failed to recognize that the conduct of the re-sentencing court was harmless error given the evidence presented and findings the court made. This argument, too, is unpersuasive. Section 9727(a) is mandatory. It requires a *hearing*. What the trial court did at re-sentencing was to accept into the record a mental health report from the federal proceedings. It was not a *hearing*, at which each side could present evidence upon which to evaluate Appellee's mental health. The trial court merely referred to, and relied upon, the mental health evaluation done by the federal authorities, and in doing so abdicated its serious responsibility to conduct an independent and meaningful procedure to fully evaluate Appellee's mental health not only for Appellee's benefit but for the ultimate benefit of society as well, as further discussed below.

▆ We have held in the past, and we do so again, that a hearing intends a judgment bench attended by judges or officials sitting in a judicial capacity, prepared to listen to both sides of the dispute and to consider deeply, reflect broadly, and decide impartially, and the mere consideration of a report moving across one's desk, is not a hearing. *Unora v. Glen Alden Coal Co.*, 377 Pa. 7, 104 A.2d 104 (1954).

▆ Finally, the Commonwealth argues that the Appellee waived the issue of the lack of conformity to 42 Pa.C.S. § 9727(a) when Appellee failed to raise the issue after the original sentencing on October 24, 1985. This argument, too, must fail. Initially, it must be observed that the crucial question before us, given our conclusion that a Section 9727(a) hearing is mandatory, is not whether Appellee validly waived such a hearing at the time of sentencing, but whether he *could* validly waive such a hearing at re-sentencing. We conclude that he could not. The Section 9727(a) hearing cannot be

278

waived or ignored. By express statutory terms, it is mandatory.

This conclusion is supported by sound public policy. While we do not dispute the fact that § 9727(a) ultimately confers a *right* to a hearing and to treatment upon criminal defendants, it is also designed to protect the interests of society. If Appellee had received a full mental health hearing prior to his original sentencing, he might have been either adequately punished for his crimes or obligated to receive *effective* psychological treatment, thus avoiding the tragedy that subsequently occurred. More than likely, Appellee, along with many others in his position, will someday be returned to society. It is incumbent that those in his position, who can be treated, be effectively treated while in custody. The courts must, to some degree, supervise this process and bear responsibility for the same. The legislature intended that procedures like § 9727(a) must be carefully adhered to, and followed meticulously, in order not only to rehabilitate defendants but to safeguard society's interests as well. In the last twenty years or so, we have witnessed the deplorable breakdown of mental health care in this country, and the consequent scandal of having hordes of mentally ill homeless roaming the streets and byways of our major cities, some of whom commit crimes. This court will not contribute to that trend.[1] The instant procedures designed to promote mental health treatment must be scrupulously followed, and cannot be waived or circumvented.

Accordingly, the decision of the Superior Court is affirmed.

McDERMOTT, ZAPPALA and CAPPY, JJ., concur in the result.

LARSEN, J., notes his dissent.

---

1. See, R.J. Isaac and V.C. Armat, *Madness in the Streets,* (The Free Press: N.Y., 1990).